# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 30, 2013

No. 13-30332

Lyle W. Cayce
Clerk

KANE MARCEAUX; GREG CORMIER; SCOTT POIENCOT; GABRIEL
THOMPSON; NORBERT MYERS; NOVEY STELLY; ULETOM P. HEWITT;
REGINA BRISCOE; ALEETA M. HARDING; GUS SANCHEZ; ROBERT
POLANCO; KENCIL D. JOSEPH; DONALD CEASAR; PAUL TAYLOR, JR.;
RACHEL ROBERTS,

Plaintiffs - Appellants

v.

LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT; CITY
POLICE OF LAFAYETTE; LESTER JOSEPH DUREL, JR., in his capacity as
President of the Lafayette City-Parish Consolidated Government; DEE
EDWARD STANLEY; JAMES P. CRAFT; GEORGE JACKIE ALFRED,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana

Before OWEN and HAYNES, Circuit Judges, and LEMELLE, District Judge.[*]
HAYNES, Circuit Judge:

Several current and former officers in the Lafayette Police Department
("Officers") appeal the district court's grant of a protective order requiring,
among other things, that a particular website they operate be "taken down" in
its entirety, which was issued at the request of Appellees, officials and entities

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

No. 13-30332

within the City of Lafayette Police Department (collectively, "Lafayette PD Defendants"). We VACATE in part and REMAND for further proceedings.

## I. Jurisdiction

A prior motions panel of this court denied the Lafayette PD Defendants' motion to dismiss this interlocutory appeal for want of jurisdiction. Although the Lafayette PD Defendants do not renew their jurisdictional arguments in their merits brief, we may consider whether we have appellate jurisdiction *sua sponte* at any time. *See Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. 1981) ("Because we may not proceed without requisite jurisdiction, it is incumbent upon federal courts trial and appellate *to constantly examine* the basis of jurisdiction, doing so on our own motion if necessary." (emphasis added)).

We agree with the motions panel, concluding that we have jurisdiction pursuant to the collateral order doctrine, which provides appellate jurisdiction to review "a small set of prejudgment orders . . . [1] that are conclusive, [2] that resolve important questions separate from the merits, and [3] that are effectively unreviewable on appeal from the final judgment in the underlying action." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103–06 (2009) (citation and internal quotation marks omitted). We have repeatedly found the doctrine applies in cases in which pre-trial orders arguably infringe on First Amendment rights. *See In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 174 (5th Cir. 2011); *Davis v. E. Baton Rouge Parish Sch. Bd.*, 78 F.3d 920, 926 (5th Cir. 1996). In *United States v. Brown*, 218 F.3d 415, 420–21 (5th Cir. 2000), we concluded that we had jurisdiction to consider a criminal defendant's pre-trial appeal of a gag order imposed by the district court on litigants in the case. We similarly conclude that we have appellate jurisdiction over the Officers' challenge here.

No. 13-30332

## II. Facts and Background

The Officers sued under 42 U.S.C. §§ 1983, 1988, alleging, *inter alia*, that the Lafayette PD Defendants imposed a "code of silence" to prevent police officers from reporting certain civil rights abuses and corruption within the Lafayette Police Department and that the Lafayette PD Defendants retaliated against them for objecting to these practices. Relevant here, the Officers communicated with the media concerning the case and maintained a website, www.realcopsvcraft.com (the "Website"), which contained: an image of the Lafayette Police Chief, a party in this suit; excerpts of critical statements made in the media concerning the Lafayette PD Defendants; certain voice recordings of conversations between the Officers and members of the Lafayette Police Department; and other accounts of the Lafayette PD Defendants' alleged failings. The Officers' attorneys eventually transferred ownership of the website to one of the Officers.

In response to this publicity, the Lafayette PD Defendants sought a protective order seeking certain limits on communications with the media and removal of the Website. At the conclusion of the two-day hearing, the magistrate judge orally granted the Lafayette PD Defendants' request to limit the trial participants' communication with the media and public. The magistrate judge then entered a written order accompanied by a memorandum ruling.

The magistrate judge opined from the bench that "[t]he [W]ebsite . . . is patently offensive on its face as a means of producing information rather than being an objective source of information supposedly created for the protection of the litigants." In the subsequent written order, the magistrate judge

> ordered that the parties' and their attorneys' contact and communication with and through the media shall be limited to (a) information contained in the public record; (b) identification of parties and claims/defenses asserted in this matter; (c) the scheduling or result of any step in this litigation; (d) references that

3

No. 13-30332

> investigation(s) is in progress, without disclosure of investigation details; (e) requests for assistance in obtaining evidence or information; (f) warnings of danger concerning the behavior of persons who are parties in this case when there is reason to believe, based on a reasonable factual inquiry, that there exists a likelihood of substantial harm to an individual or the public interest.

The magistrate judge "further ordered that the website www.realcopsvcraft.com shall be closed and removed immediately, ceasing all operations and publication, and that the recordings shall not be publicly disclosed outside the confines of this case and any other pending legal proceeding, absent leave of court." The restrictions on communications with the media were expressly modeled on Louisiana Rule of Professional Conduct 3.6 and the language approved in *Brown*, 218 F.3d at 429–31, and *Levine v. U.S. District Court*, 764 F.2d 590, 598–99 (9th Cir. 1985). The magistrate judge also "order[ed] the [W]ebsite be taken down" because it "not only contain[ed] comments and information that would violate [Louisiana Rule of Professional Conduct] 4.4, it is and has been used as a vehicle by which to disseminate inappropriate information to the media and the public." The primary rationale for the order was to allow for a fair trial by avoiding a taint on the prospective jury pool. Over objection, the district court adopted the magistrate judge's order, and this appeal followed.

### III. Standard of Review

We review a district court's grant of a protective order for abuse of discretion. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1394 (5th Cir. 1994). The district court's legal conclusions should be reviewed *de novo*, and its factual findings should not be disturbed unless they are clearly erroneous. *See United States v. Aldawsari*, 683 F.3d 660, 664 (5th Cir. 2012) (explaining that "[b]ecause [evaluating the validity of a gag order] involves constitutional and other legal questions, we review the district court's orders *de novo*. Specific factual findings of the district court on the issue

4

No. 13-30332

are, of course, entitled to review under the clearly erroneous standard." (citations and internal quotation marks omitted)). Importantly, however, "in cases raising First Amendment issues . . . an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 284–86 (1964)).

## IV.  Discussion

When restrictions are sought to be imposed on litigants after litigation is filed, a district court must balance a litigant's First Amendment rights against other important, competing considerations. *See Brown*, 218 F.3d at 424 ("'[A]lthough litigants do not surrender their First Amendment rights at the courthouse door, those rights may be subordinated to other interests that arise' in the context of both civil and criminal trials." (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n.18 (1984))).  Court orders restricting trial participants' speech are evaluated under the prior restraint doctrine, which requires that the record establish that the speech creates a potential for prejudice sufficient to justify the restriction. *See Brown*, 218 F.3d at 424–25.  In addition, the restriction must be narrowly tailored and employ the least restrictive means of preventing the prejudice. *Id.* at 425.  We note that the Officers represent that they are willing to accept the application to them of Louisiana Rules of Professional Responsibility 3.6 and 4.4 in this context, although those rules ordinarily would not apply to clients who are not lawyers. They object to the terms of the court's order only as they support or apply to the portion of the order mandating that the Website be removed in its entirety. Thus, we focus our analysis only on the portion of the order addressing removal of the entire Website.

No. 13-30332

We begin by addressing the necessity of deferring to district courts in matters affecting the daily functioning of their courts. *See, e.g., United States v. Gurney*, 558 F.2d 1202, 1209 (5th Cir. 1977) ("The trial judge is . . . granted broad discretion in ordering the daily activities of his court."). In a broader sense, considerable discretion is vested in district courts in ensuring fair trials and avoiding a "circus atmosphere" or "chaos" that can be occasioned by unfettered aggression on the part of one or both sides in litigation. *See United States v. Harrelson*, 713 F.2d 1114, 1117 (5th Cir. 1983) (explaining that district court judges possess "broad discretion, based on the law and on [their] common experience," to ensure a fair and orderly trial). We respect and affirm the district court's central role in this important process of securing a just and dignified trial proceeding.

We disagree, however, with the Lafayette PD Defendants' implicit suggestion in their briefs (made explicit at oral argument) that the Officers have a complete "either or" choice between filing a lawsuit and exercising their First Amendment rights. This area, as the district court recognized, demands a nuanced approach to the delicate balance between the necessity of avoiding a tainted jury pool and the rights of parties to freely air their views and opinions in the "market square" now taking the form of the electronic square known as the Internet. The district court faithfully and carefully addressed numerous precedents surrounding the use of "gag orders" and applied a careful and nuanced approach in much of the challenged order. When it came to the Website, however, the nuanced approach gave way to a more wholesale striking of its entire content—indeed, the very website itself. For the reasons set forth below, we conclude that this wholesale striking cannot stand in its current form.

6

No. 13-30332

We analyze this issue under the prior restraint doctrine.[1]  Court orders aimed at preventing or forbidding speech "are classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544, 550 (1993).  Indeed, this court has recognized that "[d]espite the fact that litigants' First Amendment freedoms may be limited in order to ensure a fair trial, gag orders . . . still exhibit the characteristics of prior restraints." *Brown*, 218 F.3d at 424; *see also Levine*, 764 F.2d at 595 (holding that a court's order prohibiting trial participants from speaking to the media constituted a prior restraint).  The order here explicitly restricts the expression of attorneys and parties in this litigation as it relates to the media and prevents the Officers from expression in the Website.  As a result, the protective order qualifies as a prior restraint.

Prior restraints "face a well-established presumption against their constitutionality." *Brown*, 218 F.3d at 424–25 (citing *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 467 (5th Cir. 1980) (en banc) (citations omitted)); *see also Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) ("Any prior restraint on expression comes . . . with a 'heavy presumption' against its constitutional validity.").  We must therefore balance the First Amendment rights of trial participants with our "'affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity.'" *Brown*, 218 F.3d at 423 (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979)); *see also Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966) ("The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences.").

The first step in assessing the constitutionality of a prior restraint requires considering whether the harm the court seeks to prevent justifies the

---

[1]  In so doing, we note the Lafayette PD Defendants' assertion that this is a "sanction" for "bad behavior."  Our review of the order reveals that it has little of the characteristics of a "sanctions" order and all of the characteristics of a "prior restraint."  Thus, we do not address what difference it would make if the challenged order were a sanctions order.

restraint on speech. *Brown*, 218 F.3d at 425. In assessing restrictions on speech, courts have required that the record establish different levels of harm, including a "clear and present danger," "substantial likelihood," or "reasonable likelihood" of prejudice.[2] We have not clearly delineated which standard applies to the parties (rather than the media) in civil litigation.

In *Brown*, we applied a substantial likelihood of prejudice test to both attorneys and parties in the context of a gag order applied in a criminal matter. 218 F.3d at 426 (noting that the Court in *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), "approved [a] 'substantial likelihood' standard when applied to gag orders imposed on attorneys, but did not mandate it as a constitutional minimum necessary to justify a judicially-imposed restriction on attorney speech"). As "[t]he Supreme Court has recognized that conflict between freedom of speech and the right to a fair trial is no less troubling in the non-criminal context," we conclude that *Brown* represents the right balance for this civil case. *See Bailey v. Sys. Innovation, Inc.*, 852 F.2d 93, 97 (3d Cir. 1988); *see also Brown*, 218 F.3d at 424 (providing that an individual's First Amendment rights may be limited by a court order "in the context of *both civil and criminal trials*" (emphasis added)). As in criminal matters, civil cases also require avoiding "the potential that pretrial publicity may taint the jury venire, resulting in a jury that is biased toward one party or another," *Brown*, 218 F.3d at 423, and preventing the "creat[ion] [of] "a 'carnival atmosphere,' which threatens the

---

[2] *See, e.g.*, *Brown*, 218 F.3d at 427 (applying the "substantial likelihood" of prejudice standard in a criminal case involving a gag order restricting trial participants); *Dow Jones & Co. v. Simon*, 842 F.2d 603, 610 (2d Cir. 1988) (applying the "reasonable likelihood" of prejudice standard in a criminal case involving gag order restricting trial participants); *Levine*, 764 F.2d at 595 (applying the "clear and present danger" of prejudice standard in criminal case involving a gag order restricting trial participants).

integrity of the proceeding."[3] *Id.* at 423 n.8. Thus, we apply the *Brown* standard here.

In this case, the testimony during the two-day trial presents significant evidence that the trial participants made extra-judicial comments to the media and on the Website. For instance, Plaintiff Marceaux testified that he had television interviews with two news stations, but he did not provide any newspaper interviews. This testimony, along with the testimony of the other seven witnesses, speaks to the trial participants' propensity to make extra-judicial statements.

It does not, however, establish a nexus between the comments and the potential for prejudice to the jury venire through the entirety of the Website. It is not "narrowly tailored" to excising maters with a sufficient potential for prejudice to warrant prior restraint.[4]

---

[3] Because the "substantial likelihood" standard easily transfers to civil matters, district courts in this circuit have applied *Brown* to the civil context. *See, e.g., U.S. ex rel. Stewart v. La. Clinic*, No. CIV.A.99-1767, 2002 WL 32850, at *1–2 (E.D. La. Jan. 10, 2002) (applying *Brown*'s "substantial likelihood of prejudice" standard to deny defendant a gag order prohibiting relators and their attorneys from publically discussing the litigation). *But see Liz Claiborne, Inc. v. Consumer Prod. Recovery, L.L.C.*, No. Civ. 3:04-CV-819-H, 2004 WL 1243166, at *1 (N.D. Tex. June 7, 2004) (denying gag order when the defendant "ha[d] not cited any civil case where a court has imposed a gag order, or even discussed whether a gag order was appropriate in the civil context; all cases cited by [the defendant] are criminal cases"); *Thurmond v. Compaq Computer Corp.*, No. 1:99-CV-0711, 2000 WL 33795080, at *2 (E.D. Tex. Feb. 28, 2000) (noting that the defendant "fails to cite a single published opinion from a *civil* case as authority for its proposition" that a standard less than "clear and present danger" should apply).

[4] We note that in the past, it could be assumed that everyone would see a news broadcast or local paper. Nowadays consumers obtain information from dozens of news sources. As such, the mere presence of extra-judicial comments in some forms of media does not, by itself, establish the potential for prejudice of the jury venire without a more thorough examination of that potential. Additionally, a district court should consider the question of timing of comments relative to the time of trial. *See Gentile*, 501 U.S. at 1044 (plurality opinion) (explaining that exposure to information concerning a case six months before trial is less likely to result in prejudice because it will "fad[e] from memory long before the trial date").

No. 13-30332

In sum, the district court erred in concluding that the entirety of the Website was substantially likely to cause prejudice. Accordingly, the court's determination that the entire Website "demonstrate[s] a substantial likelihood of impacting the jury venire," is overbroad and clearly erroneous. *See Canal Ins. Co. v. Thornton*, 279 F.2d 41, 43 (5th Cir. 1960) (concluding that a district court's determination was clearly erroneous when "there was no basis [in] the record" to support its finding); *cf. Batchelor v. Cain*, 682 F.3d 400, 413 (5th Cir. 2012) (concluding that the state appellate court made an erroneous factual determination that a habeas petitioner waived his request to represent himself when "the record admit[ted] of no basis" to support the finding). As a result, we must vacate the portion of the order requiring the "takedown" of the Website.

In remanding the case, we note that one particular concern to the district court was some of the recordings that appeared on the Website. One objection to the recordings made by the Lafayette PD Defendants and reurged on appeal was grounded in a misapprehension of the law. They contended that the recordings were "unethical," relying, it appears, on cases that, in turn, relied upon a now-repealed American Bar Association (ABA) Formal Opinion. *Cf. Chapman & Cole v. Itel Container Int'l. B.V.*, 865 F.2d 676, 686 (5th Cir. 1989) (relying on ABA Formal Opinion 337 to conclude that "clandestine taping of a telephone conversation" by an attorney violates the Model Rules of Professional Conduct).

In 1974, the ABA issued Formal Opinion 337 and concluded that a lawyer could not permissibly tape record another party without that party's consent, even in a location where such a tape recording would be lawful. *See* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 337 (1974). In 2001, however, the ABA repealed Formal Opinion 337 and issued Formal Opinion 01-422 expressly concluding that such surreptitious taping is not, by itself, unethical if

10

No. 13-30332

it is otherwise lawful in the particular jurisdiction.[5]  *See* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 01-422 (2001); *see also Midwest Motor Sports v. Arctic Cat Sales, Inc.*, 347 F.3d 693, 699 (8th Cir. 2003) (explaining that, based on the ABA's Formal Opinion 01-422, "a lawyer who electronically records a conversation without the knowledge of the other party or parties to the conversation does *not* necessarily violate the Model Rules of Professional Conduct").  In the absence of some indication that Louisiana would view such recordings to be "unethical" despite the ABA's change in position, we decline to accept the argument that these recordings (made by a layperson, not a lawyer) must be removed from the Website because they were "unethically" obtained.[6]

Although we vacate wholesale banning of the Website, we do not intend to tie the hands of the district court in addressing some of its content, and we recognize that there may be bases upon which to order removal of some of the content of the Website.  Recognizing the fact-bound nature of the inquiry and the limited nature of the record presented here, we express no opinion on that issue but note only that any such consideration of the Website's content must be narrowly tailored and represent the least restrictive means.  *Brown*, 218 F.3d at 425.  In other words, the court must engage in a specific review of any claimed

---

[5]  While some jurisdictions forbid recordings of conversations between two people without both parties' consent, others only forbid such recordings if neither party consents, i.e., if one party consents (or does the recording), the other party need not consent.  The latter is known as the "one-party consent rule."  Louisiana is a "one-party consent" state, and the Lafayette PD Defendants do not contest John Cormier's assertion that he was a party to the recordings he obtained.  *See* LA. REV. STAT. ANN. § 15:1303(C)(4) (West 2005) (providing that "[i]t shall not be unlawful . . . for a person not acting under color of law to intercept a[n] . . . oral communication where such person is a party to the communication"); *see also* 18 U.S.C. § 2511(2)(d) (providing for a "one-party consent" rule under federal law, unless a state imposes a stricter standard).

[6]  While there may be other reasons to remove the recordings in whole or in part, we leave this issue to the careful consideration of the district court.  We note, however, that any order based on protecting the rights of third parties must meet the tests discussed in this opinion.

11

No. 13-30332

improper material.  In this process, the district court has considerable, but not unfettered, discretion.

VACATED and REMANDED.