STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-1429

ULETOM HEWITT

VERSUS

LAFAYETTE MUNICIPAL FIRE &
POLICE CIVIL SERVICE BOARD

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2013-3504
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

**PHYLLIS M. KEATY**
**JUDGE**

**********

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**REVERSED AND REMANDED WITH ORDER.**

C. Theodore Alpaugh, III
Guste, Barnett, Schlesinger, Henderson,
& Alpaugh, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana 70113
(504) 529-4141
Counsel for Plaintiff/Appellant:
    Uletom Hewitt

**M. Candice Hattan**
**Attorney at Law**
**P. O. Drawer 91850**
**Lafayette, Louisiana  70509**
**(337) 234-0431**
**Counsel for Defendant/Appellee:**
**Lafayette Municipal Fire & Police Civil Service Board**

**Michael P. Corry**
**Hallie P. Coreil**
**Briney, Foret & Corry**
**Post Office Box 51367**
**Lafayette, Louisiana  70505-1367**
**(337) 237-4070**
**Counsel For Defendant/Appellee:**
**Lafayette City-Parish Consolidated Government through Lafayette Police Department**

**KEATY, Judge.**

Plaintiff, Uletom Hewitt, appeals the trial court's judgment in favor of Defendant, Lafayette Municipal Fire & Police Civil Service Board. For the following reasons, the trial court's denial of Hewitt's request for the issuance of a writ of mandamus is reversed. This matter is remanded to the trial court with an order to issue the writ of mandamus prayed for by Hewitt in his Petition for Writ of Mandamus.

## FACTS AND PROCEDURAL HISTORY

Hewitt was a police officer with the Lafayette Police Department and faced three disciplinary actions in 2011. The first disciplinary action, which was imposed on March 25, 2011, was a five-day suspension. The second disciplinary action, which was imposed on August 4, 2011, was a seven-day suspension. The third disciplinary action, which resulted in his termination, was imposed on August 30, 2011.

Hewitt appealed all three disciplinary actions to the Board pursuant to La.R.S. 33:2501(A). Hewitt timely filed his three appeals on April 6, 2011; August 8, 2011; and, September 7, 2011, respectively. The Board granted Hewitt an appeal in all three matters. Since both parties needed time to conduct discovery, the Board was not asked to set the cases for hearing at the time when Hewitt filed his appeals. After the parties conducted discovery, which was completed by early 2013, Hewitt's counsel asked the Board to place the first appeal, i.e., the five-day suspension, on the docket for selection of a hearing date.

Hewitt's counsel communicated this request to the Board via multiple e-mail exchanges with the Board's secretary, Frederika M. Arnaud. These e-mails were dated January 23, 2013; April 24, 2013; May 7, 2013; and May 14, 2013. The first

appeal, however, was never placed on the docket. The Board's counsel advised Hewitt's counsel that the Board would not hear the appeal while the federal lawsuit involving Hewitt was pending. Hewitt's counsel subsequently sent another e-mail to Arnaud on May 30, 2013, asking that the issue regarding the Board's refusal to hear the appeal be placed on the agenda for the upcoming meeting. In this e-mail, Hewitt's counsel advised that the Board was supposed to let him know on the record that they were not going to hear Hewitt's appeals while the federal suit was pending.

This next Board meeting occurred on June 11, 2013, wherein Hewitt's counsel's request regarding the appeals was addressed. The minutes of that Board meeting provide, in pertinent part:

8. **Discussion**: "To Clarify the Board's position with regards to pending appeals and /or complaints to the Board by individuals involved in pending litigation in which allegations of retaliatory discipline/termination have been made."

Present at the discussion was board attorney Ms. Candice Hattan to address the board on the pending appeals before the board. Specifically attorney C. Theodore Alpaugh on behalf of his client, Uletom Hewitt[,] requested a status on his client['']s pending appeals. The Board's ruling was to Stay, all such appeals pending a final judgment from state or federal court which ever applies, on allegation of retaliatory discharge or retaliatory discipline.

Individuals who can attest to the Board that they have abandoned any efforts to pursue any further judicial relief in any state or federal court under oath, satisfying the Board, then their appeal may be set for hearing before the Civil [S]ervice Boards.

Hewitt's counsel subsequently received correspondence from Arnaud, which was dated June 17, 2013, advising of the foregoing action taken by the Board.

On July 12, 2013, Hewitt filed a Petition for Writ of Mandamus or Alternatively for Appeal in the trial court. Both the mandamus and the appeal

2

were heard on September 23, 2013.  The trial court denied the mandamus and the appeal.  Judgment was entered on October 27, 2013.  Thereafter, Hewitt appealed the trial court's judgment.

On appeal, Hewitt is before this court alleging three assignments of error:

(1) The trial court erred by upholding the Board's decision since the Board failed to act in good faith and for just cause when it denied Hewitt a hearing on his appeals;

(2) The trial court erred by upholding the Board's decision since the setting of an appeal by the Board is a ministerial act which is properly the subject of a mandamus; and,

(3) The trial court erred by upholding the Board's decision since the Board's act of denying Hewitt a hearing on his appeals was an arbitrary and capricious abuse of discretion which can be addressed by mandamus.

## LAW AND STANDARD OF REVIEW

Louisiana Revised Statutes 33:2501 provides the procedure for appeals by civil service employees to the Board.  Louisiana Revised Statutes 33:2501(A) provides:

> Any regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause, may, within fifteen days after the action, demand, in writing, a hearing and investigation by the board to determine the reasonableness of the action.  The board shall grant the employee a hearing and investigation within thirty days after receipt of the written request.

Should that employee wish to appeal the foregoing decision of the Board rendered under Subsection A, Subsection E provides a procedure to appeal that Board's decision to the trial court.  Specifically, La.R.S. 33:2501(E)(1) provides:

> Any employee under classified service and any appointing authority may appeal from any decision of the board, or from any action taken by the board under the provisions of the Part that is prejudicial to the employee or appointing authority.  This appeal shall lie direct to the court of original and unlimited jurisdiction in civil suits of the parish wherein the board is domiciled.

The standard of review for appealing the Board's decisions to the trial court is as follows:

> This hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part. No appeal to the court shall be taken except upon these grounds and except as provided in Subsection D of this Section.

La.R.S. 33:2501(E)(3).

In *Moore v. Ware*, 01-3341, pp. 7-8 (La. 2/25/03), 839 So.2d 940, 945-46 (citations omitted), the supreme court explained the standard of review required for an intermediate appellate court, such as this court, as follows:

> If made in good faith and statutory cause, a decision of the civil service board cannot be disturbed on judicial review. Good faith does not occur if the appointing authority acted arbitrarily or capriciously, or as the result of prejudice or political expediency. Arbitrary or capricious means the lack of a rational basis for the action taken. The district court should accord deference to a civil service board's factual conclusions and must not overturn them unless they are manifestly erroneous. Likewise, the intermediate appellate court and our review of a civil service board's findings of fact are limited. Those findings are entitled to the same weight as findings of fact made by a trial court and are not to be overturned in the absence of manifest error.

The supreme court in *Shields v. City of Shreveport*, 579 So.2d 961, 964 (La.1991) (citations omitted), elaborated on what constitutes good faith as follows: "The dismissal of a police officer does not occur 'in good faith' if the appointing authority acted arbitrarily or capriciously, or as the result of prejudice or political expediency. 'Arbitrary or capricious' means the lack of a rational basis for the action taken."

Legal cause is also required for disciplinary action against a civil service employee. *Martin v. City of St. Martinville*, 321 So.2d 532 (La.App. 3 Cir. 1975), *writ denied*, 325 So.2d 273 (La.1976); *Leggett v. Nw. State Coll.*, 242 La. 927, 140 So.2d 5 (1962). "Legal cause for disciplinary action exists if the facts found by the

4

commission disclose that the conduct of the employee impairs the efficiency of the public service." *Leggett,* 140 So.2d at 9. A real and substantial relationship must be maintained "between the conduct of the employee and the efficient operation of the public service; otherwise legal cause" fails to exist and "any disciplinary action by the commission is arbitrary and capricious." *Id*. at 9-10. The action taken by the appointing authority "must be set aside if it was not taken 'for cause,' even though it may have been taken in good faith." *Martin*, 321 So.2d at 535.

"The [a]ppointing [a]uthority has the burden of proving by a preponderance of the evidence the occurrence of the complained of activity and that the conduct complained of impaired the efficiency of the public service." *Fernandez v. New Orleans Fire Dep't*, 01-436, p. 4 (La.App. 4 Cir. 2/6/02), 809 So.2d 1163, 1165. A classified employee has a property right in his employment which he cannot be deprived of without legal cause and due process. *Moore*, 839 So.2d 940.

## DISCUSSION

### *Entitlement to La.R.S. 33:2501(A) Hearing*

In his first assignment of error, Hewitt contends that the trial court erred by upholding the Board's decision to stay the instant civil service appeals. Hewitt alleges that the Board failed to act in good faith and for just cause when it denied Hewitt a hearing. This denial, according to Hewitt, was based upon his participation in a federal lawsuit which contained allegations of retaliatory discharge and termination. Despite the federal lawsuit, Hewitt cites the following two reasons supporting his argument that there lacks a legal basis for the Board's denial: (1) the Board is required by law to hear the appeals and (2) the federal court lacks subject matter jurisdiction since the Board is not a party to the federal lawsuit.

5

In opposition, the Board confirms that it stayed Hewitt's appeals and has not scheduled a hearing. The Board contends that, since Hewitt alleged the same relief in the federal lawsuit as requested in the appeals, inconsistent rulings could result should the appeals proceed prior to the conclusion of the federal lawsuit.

In the present case, neither party disputes that Hewitt was "subjected to any corrective or disciplinary action" and "discharged" from his employment duties pursuant to La.R.S. 33:2501(A). Neither party disputes that Hewitt timely appealed all three disciplinary actions to the Board. Thus, we agree with Hewitt that the Board is required under La.R.S. 33:2501(A) to hear the appeals. However, we must determine whether the federal lawsuit prohibits the Board from hearing the appeals.

Our review of the record shows that Hewitt, along with other current and former city police officers, filed a federal lawsuit in 2012 against numerous defendants. Those defendants included the Lafayette Police Department through the Lafayette City-Parish Consolidated Government and other police departments individually and in their representative capacities. The plaintiffs' action arose under 42 U.S.C. § 1983[1] and 42 U.S.C. § 1988[2] wherein they alleged that the defendants imposed a code of silence in order to stop police officers from reporting corruption and civil rights abuses that occurred within the police department. *Marceaux v. Lafayette City-Parish Consol. Gov't*, 731 F.3d 488 (5th Cir. 2013). The plaintiffs alleged that the defendants retaliated against them for rejecting those practices. *Id*. Absent from the list of named defendants is the Board.

---

[1] This statute provides a civil action for deprivation of rights.

[2] This statute discusses the proceedings required for vindication of rights.

6

In the federal lawsuit, the defendants attempted to get the federal court to stay the hearing of Hewitt's appeals in the Board proceedings. *Marceaux v. Lafayette City-Parish Consol. Gov't*, 2012 WL 4194521 (W.D. La. 2012), *vacated in part*, 731 F.3d 488 (5th Cir. 2013). Specifically, the defendants filed a Motion for Protective Order in order to prevent the plaintiffs from prosecuting their claims before any other tribunal, such as the Board. The defendants asked the federal court to prohibit the plaintiffs from interfering with the federal court's jurisdiction to hear and determine the merits of their claims. This included restricting Hewitt's participation in Board proceedings.

The federal court refused to stay the Board proceedings Specifically, the federal court held:

> Applying the standard applicable under the All Writs Act to the instant dispute, **the undersigned does not find the act applicable *at this point* to stay or otherwise restrict any Civil Service action** or civil litigation properly commenced in the appropriate forum. **Some of the pending litigation may lead to abstention by this Court should the complaint survive the pending motion to dismiss. Likewise, given the nature of some of the complaints made to the Civil Service Board that were presented in evidence, those claims should be properly exhausted in the administrative process before any legal proceeding can take place.**
>
> While this Court does not look favorably on duplicative litigation in other venues, an issue which will be addressed in the forthcoming Report and Recommendation applicable to the requested sanctions, it **does not see fit to tie the hands of the Civil Service Board or the 15th Judicial District Court, and concludes at this time that both entities are better fit to deal with the matters pending before them given the current procedural posture of this case**. However, should this case survive the motion to dismiss, this Court will not hesitate to apply the analysis undertaken in *Newby v. Enron Corp*. [, 302 F.3d 295 (5th Cir. 2002), *cert. denied*, 537 U.S. 1191, 123 S.Ct. 1270 (2003),] to enjoin *future* litigation under the All Writs Act and will revisit this issue if circumstances warrant.

*Id.* at 5 (bold emphasis added).

Based on our reading of the federal court's holding, its refusal was based on its opinion that the Board was better equipped to handle these matters despite a possible overlap with the federal litigation. As a result, the federal court deferred to the Board and stated that the plaintiffs, such as Hewitt, should exhaust their administrative remedies, i.e., Hewitt's civil service appeals, before any related action to those claims could be addressed in the federal litigation. Since this ruling, a majority of the causes of action in the federal lawsuit have been dismissed. *Marceaux v. Lafayette City-Parish Consol. Gov't*, 921 F. Supp.2d 605 (W.D. La. 1/30/13). Based on the foregoing and since the Board is not a party to the federal litigation, we find that there is no reason to wait on the federal court action.

The Board's attorney also argued before the trial court that it should deny the appeal and/or mandamus based in part on the federal court's gag order. Specifically, the Board's attorney stated:

> [A]nd I might note that there's a gag order as well. You know, the Board is faced with, you know, in honor of that gag order, we don't want people coming up before the Board and saying things that the federal court has instructed them not to.

Thereafter, the following colloquy took place between the trial court and Hewitt's attorney:

> THE COURT: How does the Board get around what I see as a quandary given a gag order from the federal court and along with the proceeding with the administrative hearing?
>
> MR. ALPAUGH: We're aware of the gag order, Your Honor, and I'm not sure how far it goes. So I wish that I could answer that, but I can't.
>
> THE COURT: But you can understand the quandary?
>
> MR. ALPAUGH: I do understand it. I do understand.
>
> THE COURT: Well, I'm happy you do. I'm going to deny the mandamus.

Based on the foregoing, the trial court denied the mandamus and the appeal based upon the gag order. During that hearing, Hewitt's counsel was unaware of the extent, terms, and conditions of the gag order. After the trial court's ruling, the federal court issued the following with respect to the gag order:

> The Officers sued under 42 U.S.C. §§ 1983, 1988, alleging, *inter alia*, that the Lafayette PD Defendants imposed a "code of silence" to prevent police officers from reporting certain civil rights abuses and corruption within the Lafayette Police Department and that the Lafayette PD Defendants retaliated against them for objecting to these practices. Relevant here, the Officers communicated with the media concerning the case and maintained a website, www.realcopsvcraft.com (the "Website"), which contained: an image of the Lafayette Police Chief, a party in this suit; excerpts of critical statements made in the media concerning the Lafayette PD Defendants; certain voice recordings of conversations between the Officers and members of the Lafayette Police Department; and other accounts of the Lafayette PD Defendants' alleged failings. The Officers' attorneys eventually transferred ownership of the website to one of the Officers.

> In response to this publicity, the Lafayette PD Defendants sought a protective order seeking certain limits on communications with the media and removal of the Website. At the conclusion of the two-day hearing, the magistrate judge orally granted the Lafayette PD Defendants' request to limit the trial participants' communication with the media and public. The magistrate judge then entered a written order accompanied by a memorandum ruling.

> The magistrate judge opined from the bench that "[t]he [W]ebsite . . . is patently offensive on its face as a means of producing information rather than being an objective source of information supposedly created for the protection of the litigants." In the subsequent written order, the magistrate judge

>> ordered that the parties' and their attorneys' **contact and communication with and through the media** shall be limited to (a) information contained in the public record; (b) identification of parties and claims/defenses asserted in this matter; (c) the scheduling or result of any step in this litigation; (d) references that investigation(s) is in progress, without disclosure of investigation details; (e) requests for assistance in obtaining evidence or information; (f) warnings of danger concerning the behavior of persons who are parties in this case when there is reason to believe, based on a reasonable factual

inquiry, that there exists a likelihood of substantial harm to an individual or the public interest.

> The magistrate judge "further ordered that the website www.realcopsvcraft.com shall be closed and removed immediately, ceasing all operations and publication, **and that the recordings shall not be publicly disclosed outside the confines of this case and any other pending legal proceeding**, absent leave of court." The restrictions on communications with the media were expressly modeled on Louisiana Rule of Professional Conduct 3.6 and the language approved in *Brown*, 218 F.3d at 429-31, and *Levine v. U.S. District Court*, 764 F.2d 590, 598-99 (9th Cir.1985). The magistrate judge also "order[ed] the [W]ebsite be taken down" because it "not only contain[ed] comments and information that would violate [Louisiana Rule of Professional Conduct] 4.4, it is and has been used as a vehicle by which to disseminate inappropriate information to the media and the public." The primary rationale for the order was to allow for a fair trial by avoiding a taint on the prospective jury pool. Over objection, the district court adopted the magistrate judge's order, and this appeal followed.

*Marceaux v. Lafayette City-Parish Consol. Gov't*, 731 F.3d 488, 490-91 (5th Cir. 2013) (bold emphasis added).

The foregoing gag order limited "the parties' and their attorneys' contact and communication with and through the media." *Id*. at 491. The gag order does not limit testimony in the Board proceedings. Importantly, the foregoing states "'that the recordings shall not be publicly disclosed outside the confines of this case **and any other pending legal proceeding**, absent leave of court.'" (Bold emphasis added.) This statement shows that the federal court intended for other pending legal proceedings to take place, including the Board's hearing of Hewitt's appeals. The Board, therefore, is without legal cause to refuse to set hearings on Hewitt's appeals pursuant to La.R.S. 33:2501(A).

Accordingly, the trial court manifestly erred by upholding the Board's decision since the Board failed to act in good faith and for just cause when it denied Hewitt a hearing on his appeals.

## Writ of Mandamus

In his second assignment of error, Hewitt contends that the trial court erred by upholding the Board's decision since the setting of an appeal by the Board is a ministerial act which is properly the subject of a mandamus. Hewitt alleges that the Board had a non-discretionary duty to grant and hear his appeals under La.R.S. 33:2501(A). Hewitt contends that the Board's failure to perform this non-discretionary duty can be remedied by a writ of mandamus.

Mandamus is defined as "a writ directing a public officer or a corporation or an officer thereof to perform any of the duties set forth in Articles 3863 and 3864." La.Code Civ.P. art. 3861. "A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice[.]" La.Code Civ.P. art. 3862. "A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law, or to a former officer or his heirs to compel the delivery of the papers and effects of the office to his successor." La.Code Civ.P. art. 3863.

Hewitt cites *Hoag v. State*, 04-857, p. 6 (La. 12/1/04), 889 So.2d 1019, 1023, which discusses the requirements for issuance of a writ of mandamus:

> Mandamus, codified in La.Code Civ. Proc. art. 3862, et seq., is an extraordinary remedy, to be applied where ordinary means fail to afford adequate relief. This Court has routinely held that the only circumstances under which courts may cause a writ of mandamus to issue is where the actions sought to be performed by the legislature are purely ministerial in nature. A ministerial duty, the performance of which may be required of the head of a department by judicial process, is one in which nothing is left to discretion. *Felix v. St. Paul Fire and Marine Ins. Co.* 477 So.2d 676, 682 (La.1985).

Hewitt further cites *City of Hammond v. Parish of Tangipahoa*, 07-574, p. 12 (La.App. 1 Cir. 3/26/08), 985 So.2d 171, 181-82 (footnotes and citations

omitted), to explain that the supreme court utilizes a two-prong test to determine whether an action is a discretionary function:

> The Louisiana Supreme Court, relying on *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), has devised a two-step test which courts generally employ to determine whether an action is a discretionary function. First, if a statute, regulation, or policy prescribes a particular course of action, there is no choice or discretion involved. However, when acts of government employees involve an element of choice, they are discretionary acts if the choices are grounded in social, economic, or political policy. Neither the trial court nor a reviewing court may substitute its wisdom for that of the governing body, except when there is an abuse of discretion or an excessive use of power.

Utilizing the foregoing two-prong test, we must determine whether setting an appeal under La.R.S. 33:2501(A) is discretionary. As discussed above, La.R.S. 33:2501(A) provides in part that "[a]ny . . . employee . . . who feels that he has been discharged or subjected to . . . disciplinary action without just cause, may, within fifteen days after the action, demand . . . a hearing and investigation by the board to determine the reasonableness of the action." The statute further provides that the Board "shall grant the employee a hearing and investigation within thirty days after receipt of the written request." *Id*. We find that La.R.S. 33:2501(A) is not discretionary since setting a hearing on a civil service appeal has nothing to do with "social, economic, or political philosophy." Rather, the Board's function is to hear Hewitt's appeals.

Moreover, La.R.S. 1:3 provides that "[t]he word 'shall' is mandatory." Louisiana Revised Statutes 1:4 provides that "[w]hen the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." Since La.R.S. 33:2501(A) states that the Board "shall grant the employee a hearing and investigation," the Board is mandated to grant the hearing on Hewitt's appeals.

In opposition, the Board contends that mandamus relief is not appropriate because the Board's scheduling of a hearing is a discretionary act under La.R.S. 33:2501(B)(3). Louisiana Revised Statutes 33:2501(B)(3) provides, in pertinent part, that "[t]he board shall have complete charge of any such hearing and investigation, and may conduct it in any manner it deems advisable." By determining when to hold the hearing and in staying this administrative action pending resolution of the federal court litigation, the Board alleges that it acted within its authority and discretion pursuant to La.R.S. 33:2501(B)(3).

Despite the Board's argument, La.R.S. 33:2501(A) provides when the Board "shall" grant the employee a hearing. Since its provisions are mandatory, the Board lacks any reasonable basis not to comply. *See* La.R.S. 1:3. Thus, the Board's argument lacks merit.

The Board further opposes by alleging mandamus is unwarranted because of an unreasonable delay by Hewitt in applying for the writ such that it is untimely pursuant to Comment (b) of La.Code Civ.P. art. 3862. Comment (b) to La.Code Civ.P. art. 3862 provides that "[m]andamus will be denied where there has been an unreasonable delay in applying for it." We find that the Board's argument fails, however, based upon this court's holding in *Durr v. Natchitoches Municipal Fire & Police Service Board*, 392 So.2d 720 (La.App. 3 Cir. 1980).

In *Durr,* a police officer appealed the trial court's ruling, which affirmed the board's finding that the police officer's dismissal was made in good faith for cause. This court affirmed the trial court's decision and held that:

> Although the record does reveal the Board failed to comply with the thirty day requirement of LSA-R.S. 33:2501(1), this circumstance does not warrant a reversal of the Board's decision which we find to have been made in good faith and for cause. There

is absolutely nothing in the record to indicate that appellant was prejudiced by the delay in hearing.

*Id.* at 722. We based our holding upon the following analysis:

> The appellant contends the Board's decision is invalid because a hearing and investigation was not granted within thirty days after receipt of his written request as required by LSA-R.S. 33:2501(1).
>
> Correspondence between the parties shows the hearing was set by the Board for November 29, 1978. This date was within thirty days of Mr. Durr's request. A postponement of the hearing date to December 6, 1978, was made at Mr. Durr's request. The hearing on December 6, 1978, could not be held due to the illness of a witness so it was reset for December 20, 1978. The hearing was again delayed when the Board lacked a quorum on December 20, 1978. In a letter dated January 23, 1979, Mr. Durr's attorney and the chairman of the Board agreed to hold the hearing on January 26, 1979. Mr. Durr reserved the right to appeal from the failure of the Board to comply with the thirty day requirement of LSA-R.S. 33:2501(1). The hearing was held on January 26, 1979, when Mr. Durr and the City agreed to waive their right to have a quorum of the Board members present.

*Id.* at 721-22.

Based on our reading of *Durr*, the multiple postponements of the hearing were due to many reasons. These postponements were not incurred due to anyone's fault. This court found that since Durr was not prejudiced by the multiple postponements, the delay did not run afoul of the thirty-day requirement imposed in La.R.S. 33:2501(1).

In the present case, Hewitt contends that when he was granted the appeals, the Board was not asked to set the hearing at that time due to both parties needing time to conduct discovery. The Board does not dispute this. After the parties conducted the discovery, which was completed by early 2013, e-mails contained in the record show that Hewitt's counsel asked the Board to place the first appeal on the docket for selection of a hearing date. It was at a subsequent Board meeting held at the urging of Hewitt's counsel that a ruling was made that Hewitt's appeals

would not be heard during the pendency of the federal litigation. As discussed above, that ruling has no basis given the federal court's refusal to stay the Board proceedings and the limits imposed by the gag order which do not affect Hewitt's right to a hearing on his appeals. Unlike *Durr*, we find that the Board's refusal to grant Hewitt's hearings have prejudiced him as he is unable to work as a police officer. We agree with Hewitt in that he is being held in limbo by the Board's actions. Based on the foregoing, Hewitt has an absolute right under La.R.S. 3:2501(A) to a hearing before the Board, and the Board had no discretion in this area.

Accordingly, the trial court manifestly erred by upholding the Board's decision since the setting of an appeal by the Board is a ministerial act which is properly the subject of a mandamus.

### *Was The Board Arbitrary and Capricious?*

In his third assignment of error, Hewitt contends that the trial court erred by upholding the Board's decision. Hewitt alleges that the Board's denial of a hearing on his appeals was an arbitrary and capricious abuse of discretion which can be addressed by mandamus.

In *Torrance v. City of Shreveport*, 231 La. 840, 93 So.2d 187 (1957), the supreme court addressed this court's ability to correct an arbitrary and capricious act through mandamus. The supreme court stated:

> While it is the general rule that mandamus may be invoked only to coerce performance of duties that are purely ministerial in nature, it is well settled in this state as well as in other jurisdictions that the writ may also be employed to reach and correct an arbitrary or capricious abuse of discretion by public boards or officials.

*Torrance*, 93 So.2d at 189.

"'Arbitrary or capricious' means the lack of a rational basis for the action taken." *Shields v. City of Shreveport*, 579 So.2d 961, 964 (La.1991) (quoting *Bicknell v. United States*, 422 F.2d 1055 (5th Cir. 1970)). In the context of a workers' compensation case, the supreme court further stated that "[a]rbitrary and capricious behavior is willful and unreasonable action, without consideration and regard for the facts and circumstances presented." *J.E. Merit Constructors, Inc. v. Hickman*, 00-943, p. 5 (La. 1/17/01), 776 So. 2d 435, 437-38.

The Board and the trial court based their rulings on the existence of a federal lawsuit. The Board, however, is not a named party to the federal lawsuit. The federal court also deferred to the Board and stated that plaintiffs, such as Hewitt, should exhaust their administrative remedies, i.e., Hewitt's civil service appeals, before any related action to those claims could be addressed in the federal litigation. Since this federal court ruling, a majority of the causes of action in the federal lawsuit have been dismissed. Additionally, the gag order does not limit testimony in the Board proceedings. Thus, there is no rational basis for the Board's denial of the hearings and the trial court's denial of the mandamus and appeal.

In opposition, the Board contends that the wrong standard has been utilized for the definition of "arbitrary and capricious" behavior. The Board alleges that the correct standard, which is provided in *Fire Protection District Six v. City of Baton Rouge Department of Public Works*, 03-1205, p. 3 (La.App. 1 Cir. 12/31/03), 868 So.2d 770, 772, *writ denied*, 04-299 (La. 4/8/04), 870 So.2d 270, is whether it bears a "relation to the health, safety, or general welfare of the public." The Board argues that since La.R.S. 33:2501(B)(3) gives it control over its docket, this matter is within the general welfare of the public.

16

As we discussed above, La.R.S. 33:2501(B)(3) fails to give the Board control, or discretion, over its docket since La.R.S. 33:2501(A) sets forth when the Board "shall" grant the employee a hearing. Thus, the Board's argument is without merit.

Accordingly, the trial court manifestly erred by upholding the Board's decision since the Board's act of denying Hewitt a hearing on his appeals was an arbitrary and capricious abuse of discretion.

### DECREE

The trial court's denial of Uletom Hewitt's request for the issuance of a writ of mandamus is reversed. This matter is remanded to the trial court with an order to issue the writ of mandamus prayed for by Uletom Hewitt in his Petition for Writ of Mandamus. All costs of this appeal are assessed against the Lafayette Municipal Fire & Police Civil Service Board.

**REVERSED AND REMANDED WITH ORDER.**