# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 11, 2012

Lyle W. Cayce
Clerk

No. 11-10683

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

KHALID ALI-M ALDAWSARI

Defendant-Appellee

v.

JAMES CLARK

Movant-Appellant

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before HIGGINBOTHAM, GARZA, and CLEMENT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

James Clark, a journalist, appeals from the district court's entry of an order barring communication with the media and its denial of his motion to intervene in a case involving charges of terrorism.  We affirm.

## I.

The government indicted Khalid Ali-M Aldawsari for attempted use of a weapon of mass destruction.  The day the indictment was filed, the district court

No. 11-10683

entered an order barring the parties, their representatives, and their attorneys of record from communicating with the news media about the case. Clark, a journalist, then sought to intervene in the case to challenge the order. The district court denied Clark's motion to intervene, noting that Clark had not explained his standing to challenge the order and finding that the order imposed narrowly tailored and reasonable restrictions on communications with the news media.

Clark filed a petition for writ of mandamus, which we denied, concluding that he had another remedy open to him – an interlocutory appeal.[1] We ordered the district court to docket Clark's mandamus petition as a notice of appeal dated April 25, 2011. We subsequently denied Clark's motion for a stay of the district court's order, but granted his motion to expedite the appeal. The government then moved to dismiss the case, or, alternatively, for summary affirmance, arguing (1) that the appeal was not timely and (2) that Clark lacked standing to challenge the gag order. We denied the motion for summary affirmance and carried the motion to dismiss with the case.

On appeal, Clark argues that the district court wrongly found that he had no right to intervene and that the district court's gag order violates his First and Fifth Amendment rights. The government argues that Clark's appeal is untimely and that he lacks standing. It also argues that the restrictions on communications with the media set forth in the district court's gag order were appropriate and do not violate the First Amendment.

---

[1] The collateral order doctrine provides for appellate jurisdiction over "'those district court decisions that are conclusive, that resolve important questions completely separate from the merits, and that would render such important questions effectively unreviewable on appeal from final judgment in the underlying action.'" *Davis v. E. Baton Rouge Parish Sch. Bd. v. Capital City Press,* 78 F.3d 920, 925 (5th Cir. 1996) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867(1994)).

No. 11-10683

## II.

Under Rule 4(a) of the *Federal Rules of Appellate Procedure*, notice of appeal in a civil case must be filed with the district court clerk within thirty days of the district court's judgment or order, unless one of the parties is the United States, a United States agency, or a United States official or employee sued in an official capacity, in which case the period is sixty days.[2]  Under Rule 4(b), a defendant in a criminal case must file a notice of appeal in the district court within fourteen days of (1) the entry of the judgment or order being appealed or (2) the government's filing of a notice of a appeal.[3]  When the government is entitled to appeal, it must file its notice of appeal within thirty days of (1) the entry of the judgment or order or (2) the filing of a notice of appeal by any defendant.[4]

Clark filed his notice of appeal in the district court on April 25, 2011, twenty days after the district court's denial of his original motion to intervene and eighteen days after the denial of his motion for reconsideration.  The government maintains that Clark's notice of appeal was untimely because Clark was subject to the fourteen-day time limit for appeal by a defendant in a criminal case.  We disagree.

The government's argument that Clark had to comply with the time limits in Rule 4(b)(1)(A) is unconvincing for several reasons.  First, the cases the government cites do not suggest that Clark's appeal is "categorically 'criminal.'"  The government's argument rests on a false analogy to cases involving

---

[2] FED. R. APP. P. 4(a)(1)(A)-(B).

[3] *Id.* 4(b)(1)(A).

[4] *Id.* 4(b)(1)(B).

No. 11-10683

subpoenas in grand jury proceedings,[5] motions to correct or reduce sentences,[6] and a lien that arose upon entry of a criminal judgment.[7]  Clark is not a defendant in the underlying criminal case,[8] and while press coverage is a frequent companion to criminal cases, unlike grand jury proceedings, it is not an "integral part of the criminal process."[9]  Second, the policy rationale underlying the shorter period for appeals by a defendant in a criminal case has little purchase here.  The government suggests that the Rule 4(b)(1)(A) time limit should apply because, in the Seventh Circuit's words, "the shorter time limit for criminal appeals furthers the public interest in the prompt resolution of criminal proceedings."[10]  But it is not apparent why allowing sixty days rather than fourteen days for a third-party journalist to appeal a collateral order would extend the length of the criminal proceeding.  The record here offers no indication that Clark's motions and subsequent appeal had any effect on the progress of Aldawsari's case.   And, last in sequence but not in importance, nothing in the text of Rule 4(b) suggests that the time limit for appeals by criminal defendants is meant to apply to third-party appeals from collateral orders.  Rule 4(b)(1) prescribes two specific limits– fourteen days for a defendant, and, "[w]hen the government is entitled to appeal," thirty days for the

---

[5] *In re Grand Jury Subpoenas, 89-3 and 89-4*, 902 F.2d 244, 247 (4th Cir. 1990); *In re Grand Jury Proceedings*, 835 F.2d 237, 239 (10th Cir. 1987).

[6] *United States v. Mendoza*, 372 F. App'x 513, 514 (5th Cir. 2010) (unpublished); *United States v. Byfield*, 522 F.3d 400, 402 (D.C. Cir. 2008).

[7] *United States v. Montoya-Ortiz*, 31 F. App'x 838, 838 (5th Cir. 2002) (unpublished).

[8] *See Mendoza*, 372 F. App'x at 513; *Byfield*, 522 F.3d at 401; *Montoya-Ortiz*, 31 F. App'x at 838.

[9] *In re Grand Jury Proceedings*, 835 F.2d at 239.

[10] *United States v. Craig*, 907 F.2d 653, 656 (7th Cir. 1990).

No. 11-10683

government.[11] It does not state a general deadline for any appeal in a criminal case and does not mention third-party interveners. We conclude that Rule 4(a) controls this appeal and that notice was timely.

### III.

We are left with issues of standing and the validity of the gag order. "'Because this case involves constitutional and other legal questions, we review the district court's orders de novo.'"[12] "'Specific factual findings of the district court on the issue are, of course, entitled to review under the clearly erroneous standard.'"[13]

### A.

For constitutional standing, a "plaintiff must have suffered an injury in fact" that is "fairly traceable to the challenged action" and that likely "will be redressed by a favorable decision."[14] The government argues that Clark cannot establish injury in fact because he has not shown that anyone bound by the court's gag order would be willing to speak to him about the case. Clark argues that he does not have to prove the existence of a particular willing speaker, that the gag order itself shows there are willing speakers, and that he has standing because the order has impaired the ability of the news media to gather news.

In *Davis*, this court declined to decide "whether, in every case, the media must demonstrate the existence of a willing speaker to establish standing to

---

[11] FED. R. APP. P. 4(b)(1).

[12] *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 174 (5th Cir. 2011) (quoting *United States v. Brown* (*In re Times Picayune Publ'g. Corp.*), 250 F.3d 907, 913 (5th Cir.2001)).

[13] *Id.* at 174-75 (quoting *Brown*, 250 F.3d at 913).

[14] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks, alterations, and citations omitted); *see Davis v. E. Baton Rouge Parish Sch. Bd. v. Capital City Press,* 78 F.3d 920, 926 (5th Cir. 1996).

5

No. 11-10683

challenge a court's confidentiality order."[15]    We found that a willing speaker existed in that case, which involved a desegregation plan, because the parties had stipulated that the news agencies had been able to discover information about desegregation of the school system prior to the court's issuance of the confidentiality order.[16]    We also noted that the parties had stipulated that the subject of the case was "newsworthy and of great public interest in the community."[17]  Here, both the government and Aldawsari's counsel issued press releases prior to the district court's entry of the gag order. Aldawsari's prosecution on terrorism charges is unquestionably newsworthy and of public interest.  There is no dispute that, if permitted to do so, Clark will attempt to speak with the parties or parties' counsel or representatives about the case.  We agree with Clark that the gag order affected his right to gather news and that he has standing to challenge it.

## B.

Our conclusion that Clark has standing to present his constitutional claims has little bearing on the merits of the claims, and we find them lacking.

First, Clark has not shown that the district court's gag order violates the First Amendment.  In general, an order that restricts trial participants' communications with the press "will be upheld only if the government can establish that 'the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest.'"[18] "The

---

[15] *Davis*, 78 F.3d at 927.

[16]  *Id.*

[17] *Id.*

[18] *United States v. Brown*, 218 F.3d 415, 425 (5th Cir. 2000) (quoting *Levine v. United States Dist. Court for Cent. Dist.*, 764 F.2d 590, 595 (9th Cir. 1985)).

No. 11-10683

government must also establish that the order has been narrowly drawn and is the least restrictive means available."[19]

The government argues that the district court was justified in imposing a gag order because it found that there was a substantial likelihood that extrajudicial commentary could compromise Aldawsari's right to a fair trial.[20] As the government notes, when the criminal complaint against Aldawsari was unsealed, the allegations generated a good deal of media coverage that highlighted Aldawsari's alleged radical Islamist views, bomb-making activities, and targeting of former President George W. Bush.

Clark does not appear to contest the district court's determination that the press attention garnered by the Aldawsari prosecution put Aldawsari's right to a fair trial at risk. Nor does Clark argue that the district court should have taken specific steps other than restraining the trial participants' communication with the press to protect Aldawsari's Sixth Amendment rights. Rather, Clark focuses on the breadth of the order, suggesting that it restricts the speech of "every person in the entire world who acts on delegated authority for the United States" and anyone elected to a federal office in the United States. He argues that the order thus is not narrowly tailored or "the least restrictive corrective measure."[21]

We find no support for Clark's argument. On its face, the gag order is not overly broad. The only people restrained from discussing the case are individuals "involved with the proceedings"[22]–the parties, the parties' representatives, and the parties' attorneys of record. In addition, as the

---

[19] *Id.*

[20] *See id.*

[21] *See id.* at 423.

[22] *United States v. Gurney*, 558 F.2d 1202, 1210 (5th Cir. 1977).

government observes, the order has not hindered the press. The news media has continued its coverage, drawing on public hearings and information in the public record. The restrictions imposed by the district court do not foul the First Amendment.

Second, Clark's claim that the denial of his motion to intervene limited his right to earn a living through news gathering in violation of his due process rights is without merit. Individuals possess a liberty interest in pursuing their chosen profession.[23] However, Clark has not shown that he has been deprived of pursuing work as a journalist. At most, the gag order in this case limited his access to some information about Aldawsari's case; he may still report on aspects of the case not subject to the gag order, and nothing in the gag order or the court's denial of his motion to intervene prevents him from reporting on other newsworthy issues.[24] More to the point, Clark's argument begs the question of the restraint's legality–there is no constitutional right to pursue a profession in a manner that infringes on the constitutional rights of another citizen.

## IV.

We conclude that the gag order entered by the district court was lawful and that intervention by Clark would have been futile. There was no violation of Clark's First Amendment or Fifth Amendment rights.

AFFIRMED.

---

[23] *See Stidham v. Tex Comm'n on Private Sec.*, 418 F.3d 486, 491 (5th Cir. 2005).

[24] *See Bd. of Regents v. Roth*, 408 U.S. 564, 573-74 (1972) (rejecting the plaintiff's due process claim in part because the plaintiff, a professor, had not been barred from all employment at state universities); *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1214 (5th Cir. 1989) (rejecting the plaintiff's due process argument in part because the defendant's actions "did not entirely disable him from pursuing" his chosen career).