# United States Court of Appeals for the Fifth Circuit

---

No. 24-10837

---

United States Court of Appeals
Fifth Circuit

**FILED**

April 29, 2025

Lyle W. Cayce
Clerk

Russell Thompson; Demetrius McChester,

*Plaintiffs—Appellants*,

*versus*

Will Richter, Trooper; Mark Strange, Trooper; John Doe, Trooper; Dwight D. Mathis, *Lieutenant Colonel*; Jeoff Williams, *Lieutenant Colonel*; Orlando Alanis, *Chief*; Michelle Farris, *Chief*; Joe Longway, *Regional Director*; Steven C. McGraw, *Director and Colonel*,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:22-CV-14

---

Before Stewart, Clement, and Willett, *Circuit Judges*.

Per Curiam:[*]

This case concerns qualified immunity, and whether an officer's extended stop of a driver and his passenger violated their constitutional right

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-10837

to be free from unreasonable search and seizure. For the reasons stated below, we AFFIRM the decision of the lower court.

I

In the early morning hours of September 23, 2020,[1] Trooper Will Richter pulled over Russell Thompson and Demetrius McChester on Route 287 for speeding. At the time, McChester was driving Thompson's 2019 Mercedes Benz. Richter approached the vehicle after McChester pulled over and asked for McChester's license and insurance. After realizing the vehicle was not registered or insured to McChester, Trooper Richter asked Thompson for his license, which Thompson provided. Trooper Richter noticed that the car's GPS display had the men's destination set as Memphis, Tennessee.

Trooper Richter then asked McChester to step out of the car, and McChester complied. Trooper Richter proceeded to question the men separately about where they were coming from, where they were going, and what was the purpose of their travel. McChester answered that he and Thompson were cousins, that they went to visit Thompson's family and friends in California and Las Vegas, and that they were returning to McChester's hometown of New Boston, Texas. While answering questions, McChester crossed his arms and looked away from Trooper Richter. McChester was wearing shorts and a t-shirt, and the morning was "chilly."

Trooper Richter then moved to the car to question Thompson. Thompson stated that the men were coming from Las Vegas, where they had

_____

[1] The district court's opinion states the traffic stop occurred in September 2022 but that the plaintiffs filed suit in February 2022. But both the Appellants and Appellees state the traffic stop occurred in September 2020, and the plaintiffs filed suit in February 2022. Therefore, we accept the timeline established by the parties: The traffic stop occurred in September 2020, and the plaintiffs filed suit in February 2022.

stopped to visit his friends. Thompson also told Trooper Richter that he had lived in New Boston all his life, but that he was licensed in Georgia because he "used to operate semi-trucks for a living." At this point, the stop had been ongoing for approximately ten minutes.

Trooper Richter requested their consent to search the vehicle, which they denied. He returned to his squad car and called dispatch. On the call, Trooper Richter stated that the men's stories were similar but inconsistent. Richter called Trooper Mark Strange and asked he bring his K-9 unit to the scene to conduct a free-air sniff of the vehicle. Trooper Strange arrived about 26 minutes later. His K-9 began the free-air sniff and alerted to the presence of drugs in multiple areas of the vehicle. Troopers Richter and Strange searched the cabin of the car, which smelled of marijuana, and allegedly found a dispensary receipt. When searching the trunk, Trooper Strange found a loaded handgun.

Trooper Richter returned to his squad car and checked Thompson's criminal record. The search showed Thompson had a felony conviction, so Richter arrested him for being a felon in possession of a firearm. A few days later, the charges were dropped due to a post-conviction reduction of Thompson's offense to a gross misdemeanor.

The men sued Trooper Richter, Trooper Strange, and several other defendants in February 2022, alleging various violations of their constitutional rights. The district court, over the next few months, dismissed all claims and defendants except (1) the men's various claims against Trooper Richter[2] and (2) Thompson's unlawful search claim against Trooper

_____

[2] These claims include, in relevant party: (1) both men's claims against Richter for violating their Fourth Amendment right to be free from unlawful seizure; (2) Thompson's claim against Richter for violating his Fourth Amendment right to be free from unlawful

Strange. In October 2023, Thompson and McChester served multiple subpoenas to the Texas Department of Public Safety ("TDPS"). The Department filed a motion to quash, which the district court granted. Troopers Richter and Strange then moved for summary judgment on the basis of qualified immunity, which the district court granted.

Thompson and McChester timely appealed.

## II

"We review the grant of a motion to quash a subpoena for abuse of discretion." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817 (5th Cir. 2004). "Under this standard, we 'will affirm the district court's decision unless it is arbitrary or clearly unreasonable.'" *Banco Mercantil de Norte, S.A. v. Paramo*, 114 F.4th 757, 760 (5th Cir. 2024) (quoting *Texas Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 554 (5th Cir. 2012)). "The district court's legal conclusions should be reviewed *de novo*, and its factual findings should not be disturbed unless they are clearly erroneous." *Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 491 (5th Cir. 2013).

We review the district court's grant of summary judgment de novo. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Normally, summary judgment is appropriate if the movant shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). But "we only review a denial of summary judgment based on qualified immunity 'to the extent that it turns on an issue of law.'" *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020) (internal citation omitted). Therefore, "we consider only whether the district court correctly assessed 'the legal significance' of

---

search; and (3) Thompson's claim against Richter for violating his Fourth Amendment right to be free from unlawful arrest.

the facts it 'deemed sufficiently supported for purposes of summary judgment.'" *Id.* (quoting *Cole v. Carson*, 935 F.3d 444, 452 (5th Cir. 2019) (en banc)). "In short, we may evaluate whether a factual dispute is *material* (i.e., legally significant), but we may not evaluate whether it is *genuine* (i.e., exists)." *Id.*

## III

Thompson and McChester raise two issues on appeal: (1) whether the district court erred in quashing the subpoenas on sovereign immunity grounds; and (2) whether the district court erroneously failed to conclude there are genuine issues of material fact that preclude summary judgment. We first consider the motion to quash.

## A

In September 2023, the Appellees submitted their initial disclosures, which included TDPS records. The TDPS filed a motion to quash the subpoenas. The court granted the motion because "compelling DPS compliance with the third-party subpoenas violates sovereign immunity."

On appeal, Thompson and McChester argue that the TDPS waived its sovereign immunity under the Eleventh Amendment because it participated in discovery by providing records and information to Appellees. They are incorrect.

As an agency of Texas, TDPS receives immunity from suit. We have recognized that "compelled compliance with a *subpoena duces tecum* violates" sovereign immunity. *Russell v. Jones*, 49 F.4th 507, 515 (5th Cir. 2022) (quoting *Alden v. Maine*, 527 U.S. 706, 715 (1999)). And even though TDPS is a third party to this litigation, it still receives protection against compelled compliance; "[w]here sovereign immunity applies, it applies totally." *Id.* at 514. Furthermore, "sovereign immunity is an immunity from *suit* (including

discovery), not just liability." *Id.* (emphasis in original) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). A state and its agencies cannot be compelled to participate in discovery, even as third parties. Otherwise, the sovereign's "interests" in its "dignity and authority over its prerogatives" would be treated as "less interesting" when it "is served with a *subpoena duces tecum* instead of a complaint"—that cannot be the case. *Russell*, 49 F.4th at 515.

Since sovereign immunity protects TDPS from forced compliance with Thompson and McChester's subpoenas, they must show that TDPS waived its sovereign immunity by participating in discovery. "A state's waiver of immunity must be unequivocal." *Neinast v. Texas*, 217 F.3d 275, 279 (5th Cir. 2000). Several district courts in our circuit have held that "[p]articipating in discovery does not provide the clear, unambiguous consent to suit that is required to waive sovereign immunity." *Texas LDPC, Inc. v. Broadcom, Inc.*, No. MC 4:22-CV-01780, 2023 WL 3293292, at *2 (S.D. Tex. May 5, 2023); *see, e.g.*, *Adams v. Texas Comm'n on Env't Quality*, No. A-06-CA-281-SS, 2007 WL 9701381, at *1 (W.D. Tex. May 29, 2007). We reach the same conclusion here: a state agency's partial participation as a third party in discovery does not amount to the "unequivocal" waiver of sovereign immunity our precedent requires.

For these reasons, we find that the district court did not err in granting TDPS's motion to quash the subpoenas.

B

We now focus on whether Troopers Richter and Strange are entitled to qualified immunity for alleged Fourth Amendment violations against Thompson and McChester, specifically: (1) Richter's seizure of both men, (2) Richter and Strange's search of Thompson, and (3) Richter's arrest of Thompson. These issues are addressed in turn.

1

Qualified immunity "shields public officials sued in their individual capacities 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Joseph*, 981 F.3d at 328 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity changes the nature of the summary-judgment burden, how and when the burden shifts, and what it takes to satisfy the burden." *Id.* at 329. The plaintiffs have the initial burden of showing that the qualified immunity defense is unavailable, plus "the additional burden" of showing that their violated rights were "'clearly established' at the time of the alleged violation." *Id.* (citation omitted). In other words, "[t]he plaintiff[s] must show that there is a genuine dispute of material fact" and that their "version of those disputed facts must also constitute a violation of clearly established law." *Id.* at 330.

To meet this burden, the Supreme Court has held that the plaintiffs must "identify a case" or "body of relevant case law" in which "an officer acting under similar circumstances . . . was held to have violated the [Constitution]." *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (internal quotation marks and citations omitted). "While there does not have to be 'a case directly on point,' existing precedent must place the lawfulness of the particular arrest 'beyond debate.'" *Id.* (internal citation omitted).

Thus, we decide "whether summary judgment is appropriate by 'view[ing] the facts in the light most favorable to the nonmoving party and draw[ing] all reasonable inferences in its favor' . . . then determining whether the plaintiff can prove a constitutional violation . . . that was clearly established." *Joseph*, 981 F.3d at 330 (internal citation omitted).

2

The first issue we examine is whether Trooper Richter is entitled to qualified immunity for alleged violations of Thompson and McChester's Fourth Amendment rights to be free from unlawful seizure.

"The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004). In line with Supreme Court precedent, we treat routine traffic stops as *Terry* stops. *See Terry v. Ohio*, 392 U.S. 1 (1968). The "*Terry*-test" has two parts: first, we "examine whether the officer's action was justified at its inception," and then we "inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Brigham*, 382 F.3d at 506. Accordingly, district courts must "consider the facts and circumstances of each case, giving due regard to the experience and training of the law enforcement officers, to determine whether the actions taken by the officers, including the length of the detention, were reasonable under the circumstances." *Id.* at 507.

We turn to the circumstances present in this case. Trooper Richter pulled over Thompson and McChester for speeding, which neither party disputes. Trooper Richter's "investigation of that violation" was therefore "justifie[d]." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Because Richter's actions were justified at their inception by the vehicle's unlawful speed, we continue our analysis by examining the actions he took *after* the stop.

The Supreme Court has stated that "[a]uthority for the seizure [] ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* This means that a detention should "last no longer than is necessary to effectuate the purpose of the stop, unless further

reasonable suspicion, supported by articulable facts, emerges." *Brigham*, 382 F.3d at 507.

Trooper Richter's initial questioning of Thompson and McChester does not violate their constitutional rights. As we have stated, there is no "per se rule requiring an officer immediately to obtain the driver's license and registration information and initiate the relevant background checks before asking questions." *Brigham*, 382 F.3d at 511. Officers may ask both the vehicle driver and occupant questions, and we have found that questions "within the first ten minutes of the stop before, and while waiting for, [] computer results" do not violate the Fourth Amendment. *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006); *Brigham*, 382 F.3d at 509. And the questions do not need to be directly related to why the vehicle was pulled over; "questions unrelated to the reason for the stop do not, in themselves, constitute a Fourth Amendment violation." *Estrada*, 459 F.3d at 631; *United States v. Pack*, 612 F.3d 341, 350 (5th Cir.), *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010).

Trooper Richter asked Thompson and McChester about where they were headed, where they were driving from, why they were traveling, and their relationship to one another. *See Pack*, 612 F.3d at 350 (An officer "may also ask about the purpose and itinerary of the occupants' trip as part of this investigation, because . . . these questions [are] reasonably related in scope to his investigation of the circumstances that caused the stop."). Accordingly, the questioning of Thompson and McChester for less than ten minutes did not violate their right to be free from unlawful seizure.[3]

_____

[3] Although Richter pulling over Thompson and McChester constituted a *Terry* stop, we also note that "[m]ere police questioning, without some nonconsensual restraint on one's liberty, is not a 'seizure' or detention." *Brigham*, 382 F.3d at 508 (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).

3

But the story does not end there. After Trooper Richter questioned the two men, his request to search the vehicle was denied. He then called for a K-9 unit, which took an additional 26 minutes to arrive. Was this additional period "necessary to effectuate the purpose of the stop," *Brigham*, 382 F.3d at 507, or did it cross over into a constitutional violation?

When deciding the constitutionality of an officer's extended traffic stop, we do not paint with bright lines. Instead, we consider the circumstances and the officer's reasonable suspicion that "something *illegal* was afoot."[4] *Pack*, 612 F.3d at 355.

It did not matter that Trooper Richter lacked "direct evidence that suggested the occupants were carrying contraband." *Id.* As long as the police officer acted with "reasonable diligence," he could "pursue several plausible theories in attempting to resolve the suspicion that reasonably had been created." *Id.* In the context of an extended traffic stop, we have held that many factors can reasonably create suspicion:

- when there is the "absence of [an] authorized driver, [] inconsistent stories, [] nervousness, and the presentation of a fake identification card," *id.*;
- when the vehicle occupants provide "inconsistencies and evasions," *Brigham*, 382 F.3d at 510;

---

[4] "The Supreme Court has emphasized the importance of allowing officers to 'draw on their own experience and specialized training' to make just such inferences from the facts available to them." *Brigham*, 382 F.3d at 509 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

- when the driver is "short [in] his responses," traveling "a known drug corridor," and traveling with a non-familial, underage companion, *Weisshaus v. Teichelman*, No. 22-11099, 2024 WL 620372, at *3 (5th Cir. Feb. 14, 2024), *cert. denied*, 145 S. Ct. 285 (2024);

- or when the occupants and driver provide the officer with stories containing significant inconsistencies while "traveling along an interstate known for transportation of contraband," *United States v. Smith*, 952 F.3d 642, 649 (5th Cir. 2020).

In the instant case, Trooper Richter claims multiple observations led to his suspicion. Not only were Thompson and McChester traveling a known drug corridor in the wee hours of the morning, but the GPS system displayed Memphis as their destination (not New Boston, Texas, like they claimed), the vehicle had temporary tags, and McChester "displayed multiple signs of evasiveness" when he was questioned. In response, Thompson and McChester provide innocuous explanations for these behaviors and observations. They also argue that while the stories had inconsistencies, they were essentially the same.

While Thompson and McChester are not necessarily incorrect, they are unable to show that Trooper Richter's actions constituted a "clearly established" violation of their Fourth Amendment rights. *Joseph*, 981 F.3d at 330. On appeal, Thompson and McChester argue that *Rodriguez v. United States*, 575 U.S. 348 (2015), *Illinois v. Caballes*, 543 U.S. 405 (2005), and *Arizona v. Johnson*, 555 U.S. 323 (2009) support their position.

Citations to these cases are unpersuasive. First, *Rodriguez* does not hold that "police extension of a traffic stop to conduct a dog sniff violates the Constitution's shield against unreasonable seizures." In reality, the opinion merely concluded that a dog sniff that prolongs an "otherwise-completed traffic stop" is unconstitutional in the absence of "reasonable suspicion."

11

*Rodriguez*, 575 U.S. at 353. Appellants mischaracterize the case—in the end, the Court remanded "[t]he question [of] whether reasonable suspicion of criminal activity justified detaining Rodriguez" back to the circuit court. *Id.* at 358. Second, the holding in *Caballes* does not provide Appellants with a smoking legal gun. The fact that the dog sniff took place while the officer was performing a license and vehicle check does not mean that an officer may *only* deploy a narcotics dog while performing a license and vehicle check. 543 U.S. at 408–09. Thompson and McChester's reliance on *Johnson* runs into the same problem. The case simply reiterates that an officer—without further reasonable suspicion for doing so—cannot "measurably extend" the duration of a traffic stop to inquire into matters unrelated to the initial reason for that stop. 555 U.S. at 333.

4

Thompson and McChester also argue that the district court erred in concluding they did not "identify a case" in which "an officer acting under similar circumstances . . . was held to have violated the [Constitution]." *Wesby*, 583 U.S. at 64 (internal quotation marks and citations omitted).

We agree with the district court that *United States v. Santiago*, 310 F.3d 336 (5th Cir. 2002), is distinguishable, and that the recent panel decision in *Weisshaus v. Teichelman* further negates a conclusion that the law clearly established the unconstitutionality of Richter's actions.

In *Santiago*, we held that the driver and occupant's "nervousness and conflicting statements" alone were insufficient to justify searching the car for narcotics. 310 F.3d at 342. We have since reaffirmed the holding that "[m]ere 'uneasy feelings' and inconsistent stories between a driver and a passenger do not constitute articulable facts that support a reasonable suspicion of drug trafficking." *Estrada*, 459 F.3d at 631. But here, Thompson and McChester were driving along a known drug corridor and gave a destination that did not

align with the GPS display; Richter did not rely only on their nerves and his "feelings."

And our recent opinion in *Weisshaus* cuts against Appellants' argument that the law is clearly established. In *Weisshaus*, we held that the officer had reasonable suspicion to extend a traffic stop and conduct a K-9 search when the "[a]ppellant was short with his responses to questions about his travel plans, (2) [he] had a[n out of state] driver's license and was traveling on I-40, a known drug corridor, (3) with a female that appeared to be considerably younger than him, and (4) had no familial relation to him." 2024 WL 620372, at *3. Not only did the officer observe the parties' uneasiness and inconsistent stories, but he was aware of their location on a drug corridor *and* had not dispelled his suspicions about their diverging answers to his questions.[5] In *Santiago*, however, the officer only noted the driver's uneasiness and the passenger's inconsistent story. This case is like *Weisshaus*, not *Santiago*: Richter's doubt arose from the men's inconsistent stories, apparent uneasiness, presence on a drug corridor, and his own lingering suspicions.

For these reasons, we find that the district court did not err in concluding that the law did not clearly establish that Trooper Richter's actions constituted a violation of Thomason and McChester's Fourth Amendment right to be free from unlawful seizure.

5

Thompson's remaining arguments on appeal—regarding the search by Troopers Richter and Strange and his arrest—hinge on us first finding that

---

[5] "[W]e have consistently considered travel along known drug corridors as a relevant—even if not dispositive—piece of the reasonable suspicion puzzle." *Smith*, 952 F.3d at 649.

No. 24-10837

Richter lacked reasonable suspicion to extend the stop. Because we find Trooper Richter had reasonable suspicion, we are unpersuaded by Thompson's remaining arguments on appeal.

## IV

The district court properly granted the motion to quash the subpoenas served on TDPS on the grounds of sovereign immunity. And Thompson and McChester have not proven a clearly established violation of their constitutional rights; they cannot identify caselaw that clearly proscribes Trooper Richter or Trooper Strange's conduct. Therefore, the district court's opinion is AFFIRMED.